IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01412-PAB-CBS

TRANSAMERICA LIFE INSURANCE COMPANY, as successor in interest to
Transamerica Occidental Life Insurance Company,

    Plaintiff,

v.

CHERYL LYNN TALLEY, individually,
THE ESTATE OF RICHARD M. TALLEY, a Colorado decedent, and
JOHN C. SMILEY, Chapter 7 Trustee of the Bankruptcy Estate of AMERICAN TITLE
SERVICES COMPANY, a Colorado company,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on (1) the Combined Motion for Partial Summary Judgment [Docket No. 29] filed by defendant John C. Smiley (the "trustee"), (2) the Motion for Summary Judgment [Docket No. 30] filed by defendant Cheryl Talley ("Ms. Talley"), and (3) the Motion for Discharge, Injunctive Relief, and Dismissal [Docket No. 31] filed by plaintiff Transamerica Life Insurance Company ("Transamerica"). The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This matter concerns payment of the proceeds of a life insurance policy issued

---

[1]The following facts are undisputed unless otherwise indicated. Where a part of a fact is partially disputed, the Court will recite only the undisputed portion.

by plaintiff.[2]  The policy insured the life of Mr. Richard M. Talley, who committed suicide on February 4, 2014.[3]  *See* Docket No. 1 at 1, ¶¶ 2-3.  Transamerica initiated this action on May 19, 2014 by filing a complaint for interpleader to determine the policy's lawful primary beneficiary.  *See generally id.*  At the time that it initiated this action, Transamerica believed that it was subject to multiple claims for the proceeds and that the primary beneficiary of the proceeds may be either Ms. Talley, American Title Services Company (the "debtor"), or the Estate of Richard M. Talley (the "estate").  *Id.* at 4, ¶ 23.  On August 14, 2014, Transamerica deposited the proceeds, which totaled $1,015,023.88, into the Court registry.  *See* Docket No. 25.

From 2001 until his death, Mr. Talley was the president, director, and shareholder of the debtor.  Docket No. 29 at 3, SUMF 3.  The debtor provided title insurance through non-party Title Resources Guaranty Company ("TRGC"), *id.* at 4, SUMF 5, which had a right to audit debtor's business.

On February 24, 2004, Mr. Talley applied for a life insurance policy with Transamerica.  Docket No. 30 at 14.  Mr. Talley listed Ms. Talley on the application as the sole primary beneficiary.  *See id.*  Transamerica issued the policy, with a face amount of $1,000,000, on or about April 1, 2004.  Docket No. 29 at 5, SUMF 18, 19.  With regard to changing the policy's beneficiary, the policy states that the insured

---

[2]The "policy" refers to policy number 42198489.  *See* Docket No. 29 at 5, Statement of Undisputed Material Facts ("SUMF") 18.

[3]In March 2014, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Docket No. 29 at 4, SUMF 12.  On April 4, 2014, the debtor's case was converted to a Chapter 7 liquidation, *id.* SUMF 13, and the trustee was appointed as Chapter 7 trustee for the debtor's bankruptcy estate.  *Id.* at 5, SUMF 14.

> may change the designated Beneficiary while the Insured is living by sending a satisfactory written notice to [Transamerica]. The change will not be effective until we record it at our Administrative Office. Even if the Insured is not living when we record the change, the change will take effect as of the date it was signed. However, any benefits we pay before we record the change will not be subject to the change.

Docket No. 29-2 at 16. The policy lists "the insured," Mr. Talley, as the owner. Docket No. 30 at 19.

Sometime before January 2006, Mr. Talley executed a "Beneficiary Designation" form designating the debtor as the primary beneficiary of the policy. Docket No. 29 at 6, SUMF 29; *see also* Docket No. 29-10 at 2. Transamerica effectuated the change that Mr. Talley requested even though the Beneficiary Designation form was incomplete since the "Date Signed," "Witness Signature," and "Address of Witness" lines in the form were left blank. Docket No. 30 at 45.

The trustee characterizes the policy as a "key man" policy intended to compensate the debtor for losses that would arise from Mr. Talley's death, Docket No. 29 at 5, SUMF 21, but this fact is in dispute. *See* Docket No. 38 at 4, ¶ 21. The debtor paid at least seven premiums on the policy. *See* Docket No. 29 at 5, SUMF 20.[4]

Beginning around 2007, Mr. Talley misappropriated funds from the debtor for his

---

[4]The trustee claims that the debtor paid "all" of the premiums on the policy, *see* Docket No. 29 at 5, ¶ 20, and Ms. Tally states that the evidence supports that the debtor paid only three premiums out of ten total that were paid. *See* Docket No. 38 at 4, ¶ 20. The trustee's Exhibit 6, which appears to be a Premium History Report prepared by Transamerica, provides evidence of eight payments, seven of which contain images of checks written by the debtor, *see* Docket No. 29-6 at 3-5, 7-10, and one payment by an entity named America's Home Title, LLC. *See id.* at 6. Two of the ten premiums paid on the policy are unattributed. *See generally id.*

3

personal use. *Id.* at 4, SUMF 8.[5]  In either January or early February 2014, TRGC conducted an audit of the debtor's books and records and discovered Mr. Talley's theft. *Id.* at 4, SUMF 10.  As a result of TRGC's discovery, Mr. Talley committed suicide. *Id.* at 4, SUMF 11.[6]  On February 3, 2014, the day before his suicide, Mr. Talley wrote a letter to Transamerica stating, in relevant part: "I Richard Talley . . . hereby change the beneficiary to Ms. Cheryl Talley, living at [address], my wife.  I [sic] is my desire for this change to take effect immediately upon execution of this notice."  Docket No. 29-13 at 2.

On February 19, 2014, Transamerica wrote to Mr. Talley that it was "unable to process the request" for a change in beneficiary because "[t]he incorrect form was used for the requested change."  Docket No. 29-15 at 2.  The letter also stated that "[n]o changes will be made until we receive the requested information and fully completed forms."  *Id.*  Transamerica's "Beneficiary Designation Form" was attached to this correspondence.  *See id.* at 3-4.  However, after receiving news of Mr. Talley's death, Transamerica appended an electronic note dated March 10, 2014 to Mr. Talley's

---

[5]Ms. Talley disputes SUMF 8 on the grounds that the material that the trustee cited does not support the claimed fact.  *See* Docket No. 38 at 3, ¶ 8.  SUMF 8 cites to the trustee's affidavit.  *See* Docket No. 29 at 4, SUMF 8.  It appears that the trustee's citations to his affidavit are consistently off by one paragraph.  While Ms. Talley correctly points out an error in the trustee's citations to the affidavit, the Court will not disregard this evidence on a mere technicality.  The correct citation is readily ascertainable and Ms. Talley did not point to any other evidence in the record tending to dispute this fact.  When reciting additional SUMFs for which the only basis for a "dispute" is that the trustee cited the wrong paragraph of his affidavit, the Court will consider those facts to be undisputed so long as the correct citation is readily ascertainable and supports the claimed undisputed fact.

[6]Ms. Talley states that the material cited does not support the claimed undisputed fact, *see* Docket No. 38 at 3, ¶ 11, yet Ms. Talley's response cites to additional evidence that, by itself, corroborates SUMF 11.  *See id.* at 18.

February 3, 2014 letter stating "going to accept this." Docket No. 30 at 63. Transamerica then recorded a change in the records to reflect that Ms. Talley was the primary beneficiary of the policy. Docket No. 30 at 57. In fact, Transamerica currently lists Ms. Talley as the policy's primary beneficiary, Docket No. 30 at 55, although Transamerica has indicated in discovery responses that such listing "does not reflect that Transamerica considers Cheryl Talley the proper beneficiary under the Policy. Transamerica takes no position on who is the proper beneficiary under the Policy and initiated this action to have the Court resolve who is the proper beneficiary and entitled to the proceeds." *Id.* at 57.

The trustee and Ms. Talley filed cross motions for partial summary judgment, each seeking judgment that he or she is the policy's proper beneficiary.[7] Transamerica asks the Court to issue an order (1) discharging it from all liability as to the proceeds, (2) enjoining defendants from initiating any other action against Transamerica related to the policy or the proceeds, (3) dismissing Transamerica from this action, and (4) granting any other relief as the Court deems appropriate under the circumstances. *See* Docket No. 31 at 5.

---

[7]The trustee asserted the following cross-claims: (1) declaratory judgment that the debtor is the policy's proper beneficiary, (2) avoidance and recovery of fraudulent transfers under the United States Bankruptcy Code, (3) avoidance and recovery of fraudulent transfers under Colo. Rev. Stat. §§ 38-8-101 *et seq.*, and (4) unjust enrichment. *See* Docket No. 15 at 9-12. Ms. Talley asserted a cross claim for declaratory judgment that she is the proper beneficiary of the policy. *See* Docket No. 14 at 5. The parties' cross motions for summary judgment address Ms. Talley's cross-claim and the trustee's first cross-claim but do not address the trustee's fraudulent transfer and unjust enrichment claims.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III. ANALYSIS

### A. Cross Motions for Summary Judgment

The trustee's and Ms. Talley's cross motions for summary judgment hinge on a single question of contract interpretation: namely, whether Mr. Talley's February 3, 2014 letter constituted "satisfactory written notice" of his intention to name Ms. Talley as the policy's primary beneficiary. The interpretation of an insurance policy is a legal question. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).[8] An insurance policy is a

---

[8]The parties appear to agree that Colorado law applies to the claims in this case. The Court agrees. *Trierweiler v. Croxton and Trench Holding* Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) ("a federal trial court sitting in diversity applies the forum state's choice of law"); *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009) (holding that, under Colorado's choice of law rules, Colorado law applies to claims arising from an insurance contract that was negotiated and entered into in Colorado where the insured's place of business was in Colorado).

contract and should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).

### *1. The Trustee's Motion*

The trustee argues that summary judgment is appropriate because there is no dispute that Mr. Talley's February 3, 2014 letter did not comply with the requirements of the policy, *see* Docket No. 29 at 12-14, and that Mr. Talley's failure of compliance should not be excused under the equitable doctrine of "substantial compliance" because he did not do everything within his power to comply with the policy's requirements. *See id.* at 15-16.

The trustee argues that Mr. Talley's letter did not constitute "satisfactory written notice" as required by the policy because Transamerica, upon receipt of the letter, informed him that it was unable to process the change in beneficiary until after he completed the required form. *See id.* The trustee is correct that "[w]here the contract of insurance . . . prescribes the manner in which a beneficiary or change in beneficiary may be designated, a designation or change in beneficiary ordinarily can be accomplished only in the manner provided for in the policy[.]" *Roberts v. Johnson*, 212 F.2d 672, 674 (10th Cir. 1954). The policy, however, requires no specific manner by which the insured must change the beneficiary. The policy states only that it requires "satisfactory written notice." Docket No. 29-2 at 16. The Colorado Court of Appeals has held that the

requirement that a change in beneficiary request must be "'satisfactory to the company' adds no requirements which would be ascertainable to the insured at the time the policy was issued, or at the time the insured desired to effect a change in beneficiary." *ITT Life Ins. Corp. v. Damm*, 567 P.2d 809, 810 (Colo. App. 1977).

The trustee's attempts to distinguish *ITT* are unpersuasive. The trustee first argues that the insurance company in *ITT* merely requested that the insured complete a specific form before a change in beneficiary would take effect, whereas Transamerica rejected the letter. *See* Docket No. 41 at 6. This is a distinction without a difference. The question is whether the policy imposed on Mr. Talley a requirement to complete a specific form. As held in *ITT*, the language in the policy was insufficient to create such a requirement. *See ITT*, 567 P.2d at 811 ("there is no requirement in the policy that the insured must use printed forms supplied by the company in order to change the beneficiary, and the term 'satisfactory to the company' cannot be read to imply such meaning."). Second, the trustee argues that Mr. Talley had actual knowledge before his death that he was required to use the Beneficiary Designation Form because he used a similar form when he changed the beneficiary from Ms. Talley to the debtor around January 2006. *See* Docket No. 41 at 6. But Mr. Talley's knowledge of a form that is not included in or incorporated by reference into the policy does not serve to create a new contractual obligation that is absent from the policy's terms. "[T]he only requirements for a change of beneficiary which are recognized are those that are clearly specified in the contract, and the insurer may not add unwarranted requirements thereto." *ITT*, 567 P.2d at 810 (citations omitted). Moreover, even if Transamerica were permitted to impose

extra-contractual obligations, the trustee has not established that Mr. Talley's knowledge that the beneficiary designation form *existed* establishes that he knew that the form was the sole method of notice that Transamerica would consider satisfactory.

The trustee also argues that Mr. Talley's letter, which was addressed to Transamerica's Home Office in Los Angeles, California, was ineffective because it violated the policy's requirement that all written requests be received at Transamerica's Administrative Office in Kansas City, Missouri. Docket No. 29 at 13. The policy defines "written request" as "a signed request in a form satisfactory to [Transamerica] that is received at [Transamerica's] Administrative Office." Docket No. 29-2 at 15. The policy language does not say that the request be "sent" to the Administrative Office. It is undisputed that Transamerica received Mr. Talley's letter, *see* Docket No. 29 at 8, SUMF 47, and the trustee provides no evidence that the letter was not received at the Administrative Office. Mr. Talley's failure to send the letter to Transamerica's Administrative Office, therefore, does not entitle the trustee to summary judgment.

The Court finds that the trustee is not entitled to summary judgment on the grounds that Mr. Talley failed to comply with the requirements of the policy. Because the Court finds that Mr. Talley did comply with the policy's requirements, the Court need not address the trustee's second argument, that Mr. Talley did not substantially comply with such requirements.

### 2. *Ms. Talley's Motion*

Ms. Talley argues that she is entitled to summary judgment that she is the policy's sole beneficiary because Mr. Talley, as the owner of the policy, was entitled to designate a beneficiary of his choosing, that Mr. Talley named Ms. Talley as the beneficiary by

providing satisfactory written notice to Transamerica, and that he possessed the necessary mental capacity to execute the change in beneficiary.

The Court first addresses whether Mr. Talley was the "owner" of the policy. Under Colorado law, the owner of an insurance policy has a control interest and "includes the power to name and change beneficiaries[.]" *Napper v. Schmeh*, 773 P.2d 531, 533 n.3 (Colo. 1989), *superseded by statute on other grounds* by Colo. Rev. Stat. § 15-11-804(2). Ms. Talley states that Mr. Talley was the owner of the policy as evidenced by the policy itself. Docket No. 30 at 5. The Court agrees. Mr. Talley's life insurance application included a field that calls for the "Owner's Name (if other than Proposed Insured)." *See* Docket No. 29-2 at 27. That field was left blank. *See id.* Moreover, Transamerica's discovery responses indicate that the debtor has never been the owner of the policy and that its records reflect that the address of the "owner" of the policy is that of Mr. Talley. Thus, Ms. Talley has proven that Mr. Talley was the owner of the policy.

The trustee argues that the ownership of the policy is in dispute because the debtor paid the premiums on the policy. *See* Docket No. 32 at 19. According to the trustee, Mr. Talley's use of the debtor's funds to pay his insurance premiums was one of the components of his theft from the debtor. *See id.* The case cited by the trustee does not support such a finding. In *Paschal v. Great W. Drilling, Ltd.*, 215 S.W. 3d 437, 444 (Tex. App. 2006), the Texas Court of Appeals affirmed a trial court's decision to impose a constructive trust on the proceeds of a life insurance policy where a jury found that the insured had used embezzled funds to pay the premiums on the policy. *Id.* ("when an

insurance policy's premiums are paid with funds fraudulently obtained, the beneficiary of the policy holds the future proceeds from that policy in trust for the owner of the defrauded funds"). Numerous courts have articulated a similar principle. *See, e.g.*, *In re McLain*, 516 F.3d 301, 313 (5th Cir. 2008) ("the use of funds wrongfully obtained to make premium payments on an insurance policy creates a property interest in the proceeds of that policy on behalf of the owner of the funds wrongfully obtained"); *Vorlander v. Keyes*, 1 F.2d 67, 69 (8th Cir. 1924) (the party whose funds were misappropriated to pay life insurance premiums has "equitable ownership and title of the misappropriated funds and the fruits thereof," and the trustee "holds nothing but the naked title for the exclusive benefit" of the wronged party). The Court is unaware of any case, however, that states that misappropriation of funds to pay premiums on a life insurance policy effects a change in legal ownership of the policy.[9]

The Court next addresses the effect of Mr. Talley's February 3, 2014 letter. As stated in *ITT*, a policy that requires only written notice that is "satisfactory to the company" requires no more than "reasonable notice in writing by the insured to the company." *ITT*, 567 P.2d at 810-11. The Court finds that Mr. Talley's letter provided such reasonable notice. Notably, Mr. Talley's letter provides virtually the same level of detail that he provided when he named the debtor as the primary beneficiary in January 2006. *Compare* Docket No. 29-10 at 2 *with* Docket No. 29-13 at 2. Both the form and Mr. Talley's letter include Mr. Talley's name and address, his policy number, and the

---

[9] The trustee may have an equitable interest in the proceeds, but that question is more appropriately resolved on the trustee's equitable cross-claims for avoidance of fraudulent transfer and unjust enrichment in Phase II.

name and address of the intended beneficiary. *See id.* The information that Mr. Talley provided on the 2006 beneficiary designation form that is absent from the letter is his social security number and a clear distinction between who he designated as a primary beneficiary and a secondary beneficiary. Mr. Talley's letter included the date and his relationship to the beneficiary, both of which were missing from the official form he submitted earlier. *See id.* The Court concludes that Mr. Talley's letter constituted reasonable written notice within the meaning of the policy. Mr. Talley's failure to specifically request that Ms. Talley be made the primary or contingent beneficiary does not make his letter unclear. Mr. Talley had already listed Ms. Talley as the contingent beneficiary before he sent the February 3, 2014 letter, *see* Docket No. 29-10 at 2, and, thus, the letter expresses his clear intent to name her as the policy's primary beneficiary. As a result, Mr. Talley's February 3, 2014 letter properly changed the policy's beneficiary before his death.

Finally, the Court considers Mr. Talley's mental capacity to effect a change in the policy. The trustee argues that Mr. Talley's suicide, in connection with his ongoing theft from the debtor, creates a question of fact as to his mental capacity. *See* Docket No. 32 at 19. The Court disagrees. "There is always in civil, as well as in criminal, actions a presumption of sanity." *Hanks v. McNeil Coal Corp.*, 168 P.2d 256, 260 (Colo. 1946). In the context of business transactions, "the legal test of . . . insanity" is whether a person "was incapable of understanding and appreciating the extent and effect of business transactions in which he engaged." *Id.* A party claiming that a contract (or here, a material change to an insurance policy) is void "has the burden to overcome the

presumption that each party is sane and competent to contract and must prove that the party whose mental capacity is put in question did in fact lack the requisite mental capacity"). *First Data Corp. v. Konya*, No. 04-cv-00856-JLK-CBS, 2008 WL 2228657 at *3 (D. Colo. May 27, 2008) (applying Colorado law).  The trustee urges the Court to consider Mr. Talley's suicide along with "[h]is use of the Debtor as a means of diverting money to [Ms. Talley] and his family" as evidence of Mr. Talley's lack of mental capacity. *See* Docket No. 32 at 20.  The Court finds that the trustee has not introduced any competent evidence that Mr. Talley lacked the capacity to understand the effect of his February 3, 2014 letter.  "Lack of capacity . . . cannot be presumed from the mere fact of suicide itself." *Am Home Life Ins. Co. v. Barber*, 2003 WL 22327092 at *3 (D. Kan. 2003) (citing *Am. Fin. Life Ins. and Annuity Co. v. Youn*, 7 F. App'x 913 (10th Cir. 2001)).  The trustee presents no competent evidence that suggests that Mr. Talley's misappropriation of funds from the debtor has any bearing on his mental capacity.

In sum, the Court finds that summary judgment is appropriate on Ms. Talley's first cross-claim for declaratory judgment that she is the proper beneficiary of the policy.  Summary judgment is likewise appropriate on the trustee's corresponding cross-claim for declaratory judgment.

### B.  Transamerica's Motion for Discharge and Injunctive Relief

#### *1. Appropriateness of Interpleader*

"Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999) (citation omitted).  "An interpleader action typically proceeds in two

stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. . . . During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citation omitted).

No party has formally requested that the Court perform its first stage analysis. Although typically the party who files a complaint in interpleader requests such relief by filing a formal motion, "[t]here is no set procedure for conducting the first stage of interpleader." 7 Charles Wright, Arthur Miller & Mary Kane, Fed. Practice & Procedure § 1714 (3d ed. 2001). Accordingly, the Court construes Transamerica's request for "any such other relief" as the Court deems appropriate to include a motion to approve Transamerica's interpleader.

The Court first finds that it has jurisdiction over this action. There are two forms of interpleader: statutory interpleader, which is governed by Section 1335 of Title 28 of the United States Code, and rule interpleader, governed by Rule 22 of the Federal Rules of Civil Procedure. "The central distinction between statutory interpleader and rule interpleader is the basis for a federal court's subject matter jurisdiction under each." *Comm. Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993). Transamerica invokes Rule 22, *see* Docket No. 1 at 1, which is "merely a procedural device; it confers no jurisdiction on the federal courts." *Morongo Band of Mission*

14

*Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382 (9th Cir. 1988). Thus, "an interpleader brought under Rule 22 must fall within one of the general statutory grants of federal jurisdiction." *Comm. Union*, 999 F.2d at 584. Here, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Transamerica is a citizen of Iowa for diversity purposes, *see* Docket No. 1 at 2, ¶ 7, and Ms. Talley, the debtor, and the trustee[10] are citizens of Colorado. See Docket No. 14 at 2, ¶ 8; Docket No. 15 at 2, ¶ 10. Additionally, since the proceeds at stake in this litigation exceed $1,000,000, *see* Docket No. 25, this matter satisfies the requirement that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a).

Next, the Court finds that Transamerica was "actually threatened with double or multiple liability." *High Tech. Prods., Inc.*, 497 F.3d at 641; *see also Indianapolis Colts v. Mayor and City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984) (noting that a complaint in interpleader requires the court to decide "whether the stakeholder legitimately fears multiple vexation directed against a single fund") (citation omitted). Transamerica alleged that both Ms. Talley and the trustee have claimed that they are entitled to the proceeds. Docket No. 1 at 4, ¶¶ 20-21. Transamerica further alleged that it believed that the estate may also claim that it is entitled to the policy proceeds. *Id.* ¶ 22. Although the estate denied any intent to assert a right to the proceeds, *see* Docket No. 20 at 4, ¶ 22, both Ms. Talley and the trustee have admitted that they represented to

---

[10] *See Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 543 (S.D.N.Y. 2014) (noting that it is uncertain whether courts are to consider citizenship of bankruptcy trustee or debtor for diversity purposes). In this case, since the trustee and debtor are both diverse from Transamerica, the Court is satisfied that the diversity requirement of 28 U.S.C. § 1332(a) is met.

15

Transamerica that they are entitled to the proceeds.  See Docket No. 14 at 3, ¶ 20 (Ms. Talley); Docket No. 15 at 3, ¶ 21 (the estate).   Thus, Transamerica reasonably feared exposure to claims from multiple parties whose interests were adverse to one another and properly invoked interpleader.

### *2. Motion for Discharge and Injunctive Relief*

Transamerica seeks discharge from all liability as to the proceeds, an injunction prohibiting defendants from bringing suit against Transamerica related to the policy or the proceeds, and dismissal from this lawsuit with prejudice.  See Docket No. 31 at 5.  The trustee opposes Transamerica's motion on narrow grounds, asking the Court to limit any injunctive relief to the proceeds currently held in the Court registry rather than any claim relating to the policy.  See generally Docket No. 33.

After Transamerica filed its motion, the Tenth Circuit decided *In re Millennium Multiple Emp'r Welfare Benefit Plan*, 772 F.3d 634 (10th Cir. 2014).  In *Millennium*, the Tenth Circuit held that, in a statutory interpleader action, the court may enjoin any future actions claiming an interest in a single, identifiable stake, but lacks jurisdiction to enjoin other claims between the claimants and the stakeholder.  *Id.* at 642.  In *Millennium*, the Tenth Circuit affirmed an order of the Bankruptcy Court for the Western District of Oklahoma that enjoined any future claims concerning legal or equitable ownership of the life insurance policies at issue, but denied injunctive relief as to independent tort claims against the company that issued the policy as beyond the court's interpleader jurisdiction.  See *id.* at 642-44.

Transamerica argues that *Millennium* is distinguishable from this case for three

reasons: first, in *Millennium*, the competing claimants had already initiated their own private tort actions before the stakeholder filed its interpleader action; second, no party has alleged any counterclaims against Transamerica unrelated to ownership of the proceeds; and third, *Millennium* was based on statutory rather than rule-based interpleader, and a court's jurisdiction in a rule interpleader action is not limited to the stake at issue.  *See* Docket No. 40 at 5.

The Court finds that an injunction limited to the proceeds is appropriate.  Although *Millennium* concerned statutory rather than rule-based interpleader, the Tenth Circuit's rationale applies equally in this context.  As explained in *Millennium*, interpleader actions "focus on adverse claims to an identifiable asset."  772 F.3d at 640.  Because an interpleader action concerns the proper disbursement of funds among multiple claimants from an identifiable stake, "the stake constitutes the outer limits of that jurisdiction."  *Id.* at 642.  Transamerica argues that *Millennium*'s holding does not apply to rule interpleader because Rule 22 does not require the stakeholder to deposit the stake into the Court registry.  Docket No. 40 at 6.  The Court disagrees.  Rule and statutory interpleader differ primarily in their jurisdictional requirements.  *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993) ("The central distinction between statutory interpleader and rule interpleader is the basis for a federal court's subject matter jurisdiction under each"); *see also Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1241 (E.D. Ky. 2011) ("[t]he primary distinction between the two types of interpleader is that unlike the interpleader statute which grants district courts original jurisdiction, the interpleader rule is merely a procedural device and does not grant this

Court subject matter jurisdiction"). Transamerica cites no case, and the Court is aware of none, that holds that rule interpleader allows courts greater jurisdiction over the parties than statutory interpleader. Moreover, a holding that rule interpleader allows the Court to issue blanket injunctions prohibiting the parties from bringing any future action related to the case or controversy would be antithetical to the purpose of Rule 22, which is to allow for the joinder of parties from whom a plaintiff fears "double or multiple liability." *See* Fed. R. Civ. P. 22(a)(1); *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) (noting that "interpleader was never intended . . . to be an all-purpose 'bill of peace.'"). For rule as well as statutory interpleader, therefore, once it has been established that interpleader is appropriate to resolve two or more adverse claims to a stake, "the stake constitutes the outer limits of th[e Court's] jurisdiction." *Millennium*, 772 F.3d at 642.

The Court is also unpersuaded that this case is distinguishable from *Millennium* because no claims have yet been filed against Transamerica that do not relate to disbursement of the proceeds. *Millennium* held that the federal courts lack interpleader jurisdiction to enjoin any claims other than those that seek to recover a portion of the disputed stake. *Id.* This jurisdictional limitation exists regardless of whether or not the additional claims have already been asserted. As such, the Court will limit its injunctive relief to future suits by the parties concerning the policy proceeds.[11]

---

[11] Because the Court follows *Millennium*, the Court need not consider the trustee's argument that injunctive relief cannot be granted without first obtaining leave from the appointing bankruptcy court. *See* Docket No. 33 at 4.

### *3. Dismissal and Realignment of the Parties*

As no party has objected to Transamerica's dismissal from this action and the Court has found that Transamerica has properly invoked interpleader, the remainder of the relief that Transamerica requests will be granted. Accordingly, Transamerica will be dismissed with prejudice from this action. The parties will therefore be realigned, with Ms. Talley as the plaintiff and the trustee and the estate as defendants.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Combined Motion for Partial Summary Judgment filed by defendant John C. Smiley, Chapter 7 Trustee of the Bankruptcy Estate of American Title Services Company [Docket No. 29] is **DENIED**. It is further

**ORDERED** that the Motion for Summary Judgment filed by defendant Cheryl Talley [Docket No. 30] is **GRANTED**. Defendant John C. Smiley's second, third, and fourth cross-claims remain pending. It is further

**ORDERED** that plaintiff Transamerica Life Insurance Company's Motion for Discharge, Injunctive Relief, and Dismissal [Docket No. 31] is **GRANTED** in part as reflected in this order. It is further

**ORDERED** that plaintiff Transamerica Life Insurance Company is dismissed from this action. It is further

**ORDERED** that the parties are hereby realigned as follows:  Cheryl Lynn Talley is now the plaintiff and the Estate of Richard M. Talley and John C. Smiley are now defendants. It is further

**ORDERED** that Transamerica Life Insurance Company is discharged from any liability concerning the proceeds of policy number 42198489, which insured the life of Richard M. Talley.  It is further

**ORDERED** that, within fourteen days of this order, Transamerica Life Insurance Company may file any motion for attorney's fees.  It is further

**ORDERED** that, within fourteen days of this order, Transamerica Life Insurance Company may file any bill of costs with the Clerk of the Court.

DATED August 31, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge